E-FILED | 9/19/2025 12:54 PM
CC-41-2025-C-368
Raleigh County Circuit Clerk
Brianne Steele

## IN THE CIRCUIT COURT OF RALEIGH COUNTY, WEST VIRGINIA

**ELIZABETH MARIE PHILLIPS,**                         **PLAINTIFF,**

**v.**                                                  **CASE NO.: 25-C-**

**BENJAMIN "Ben" HATFIELD, former**
**prosecuting attorney of Raleigh County,**
**West Virginia, an individual; RALEIGH**
**COUNTY COMMISSION; a political subdivision,**
**LINDA EPLING, a Raleigh County Commissioner,**
**in her individual capacity ;**
**DANIEL J. HALL, a Raleigh County Commissioner,**
**in his individual capacity;**
**GREGORY DUCKWORTH, a Raleigh County Commissioner,**
**in his individual capacity; and**
**JOHN/JANE DOE, individually and as employees of the Raleigh County**
**Commission and/or servants at the pleasure of**
**former prosecuting attorney Benjamin "Ben" Hatfield,**

                                              **DEFENDANTS.**

### COMPLAINT

COMES NOW Elizabeth Marie Phillips, by and through Counsel, Brandon L. Gray, Matthew Bradford, Timothy P. Lupardus, and the law firms of Bradford & Gray PLLC, Lupardus Law Office, LC, and hereby brings claims for violation of the West Virginia Human Rights Act on the basis of gender and sex, 42 U.S. Code Section 1983 and 1988, and for hostile work environment against the Defendants. Plaintiff hereby states as follows:

### PARTIES

1.     That the Plaintiff, Elizabeth Marie Phillips is and was at all times relevant herein a resident of Mercer County, West Virginia and was employed at the Office of the Prosecuting Attorney of Raleigh County as a Legal Assistant.

2.     That the Defendant, Raleigh County Commission (hereafter the "Commission"), is a political subdivision of Raleigh County, West Virginia, but is not an executive political subdivision. The Raleigh County Commission is an institution and is sued in its capacity as such upon the additional allegation that the harms is caused as alleged herein arose from its policies, practices or customs.

3.     That the Defendant Benjamin "Ben" Hatfield (hereafter "Hatfield"), at all times relevant to this action was a resident of Raleigh County, West Virginia, and is the former Raleigh County Chief Prosecuting Attorney and, as such, was employed by the Defendant Raleigh County Commission and/or exercised supervision and authority over employees of the Raleigh County Commission and Raleigh County Prosecuting Attorney's Office.

4.     Daniel J. Hall, Linda Epling, and Gregory Duckworth, are the present Raleigh County Commissioners, were at all times in which any pf them is herein referenced the elected officials charged with oversight of the Raleigh County Commission and the carrying out of all statutory, regulatory, supervisory, and other nondelegable duties of the Raleigh County Commission, including but not limited to supervision, payment, management, human resources, training, budgeting, oversight, programming, and services for county employees, including but not limited to personnel employed as professionals, para-professional and support staff in the office of the Raleigh County Prosecuting Attorney.  Among the duties of the Commissioners named herein is an assurance that all county employees enjoy healthy, safe work places, free from sexual harassment, cruel or unusual punishment, infringement on liberty, infringement on speech, and infringement on professional

employment, licensing, and/or the ability to perform and seek chosen employment. They are each sued in their individual capacity and are alleged throughout to be acting with the color of state law.

5.      John/Jane Doe are individuals as yet unknown to the degree necessary to name and include herein as named defendants who are believed to have assisted the Raleigh County Commission, the Defendant Commissioners and/or the Defendant Benjamin "Ben" Hatfield in carrying out the actions and omissions which are complained of and which give rise to the allegations, losses, damages and claims made herein.

## JURISDICTION AND VENUE

6.      That the events giving rise to this action occurred within Raleigh County, West Virginia, and/or as a function or in connection with the Plaintiff's employment as an legal assistant for Raleigh County, West Virginia such that jurisdiction and venue are proper in the Circuit Court of Raleigh County, West Virginia.

7.      Upon information and belief, each of the defendants named herein can be served in process in Raleigh County, west Virginia.

8.      That actions against a political subdivision shall be brought in the county in which the political subdivision is located or in the county in which the cause of action arose. West Virginia Code § 29-12A-13.

9.      That prior notice of a civil action is not required prior to filing a Complaint against a political subdivision as County Commissions or the individuals employed by those entities are not considered to be within the executive branch of government. *Patton v. Cnty. of Berkeley*, 242 W. Va. 315, 321, 835 S.E.2d 559, 565 (2019).

## STATEMENT OF FACTS

10. That Defendant Hatfield was elected as Chief Prosecuting Attorney of Raleigh County in 2020 and took office in 2021. He exercised that office and position at all times relevant hereto. Exercising powers afforded him under color of law, West Virginia Code § 7-7-7. Both Defendant Hatfield and the Commission Defendants had a statutory obligation to prevent disparity in pay based on factors such as sex appeal, gender and physical attractiveness among other reasons. West Virginia Code § 7-7-7(e) provides that "**[t]he county officials**, in fixing the individual compensation of their assistants, deputies and employees **and the county commission** in fixing the total amount of money to be expended by the county, shall give due consideration to the duties, responsibilities and work required of the assistants, deputies and employees and their compensation shall be reasonable and proper."(emphasis supplied.) Plaintiff, Elizabeth Phillips, began working at the Raleigh County Prosecuting Attorney's Office as a Legal Assistant when

11. That during her employment with the Prosecutor's Office, the Plaintiff began to receive frequent text messages from Defendant Hatfield after hours that were not related to work. The text messages were repetitive and very strange to her. She felt a response was expected, but she was not sure, after the first few, how to continue dealing with them.

12. That examples of messages that Defendant Hatfield sent to Plaintiff consisted of but not limited to texts where he informed Plaintiff, "You're wonderful," "You're great," and "You will never want to leave here." These texts started most days right after work as Plaintiff was driving home , and persist past the dinner hour, and she

tried to cut him off, but was concerned that he would grow angry and seek reprisal.

13.    Strangely, hat Defendant Hatfield informed Plaintiff that he has an exclusive text thread with her and stated it was exclusively just us for the two of them and that she was lucky to be able to communicate one on one with him. That was made Plaintiff feel very awkward.

14.    That Plaintiff felt compelled to respond to the text messages as Defendant Hatfield was her direct supervisor and she was afraid of retaliation from him. Eventually Hatfield made a new hire, and his strange affinity for after hours texting seemingly shifted to that person.

15.    That upon information and belief, Defendant Hatfield's behaviors toward your Plaintiff were grooming behaviors with which Plaintiff grew increasingly uncomfortable.

16.    Plaintiff's first position in the prosecutor's office was at the front, and as people entered or left, they had to pass a large glass window at her desk. Every time Defendant Hatfield passed that glass, he made a heart gesture with his hands to Plaintiff. It was awkward and she had no idea how to respond, but Hatfield wanted a response. Others in the office saw this happening.

17.    During the time when the Plaintiff was enduring this messaging, the Commission Defendants, despite their obligations to every county employee, had no "private human resource line", no human resources department, and no human resources liaison. In fact, there was no county employee handbook, no on-boarding training, and no published rules for conduct, reporting or supervision of someone in a position of power such as Hatfield.

18.  The Commission's failure to provide a human resources line or means to report was a long-standing policy, practice and custom of the Raleigh County Commission, and prior to the eruption of Defendant Hatfield's circumstances this same practice, policy and custom had lead to significant insult, injury and suffering in another county office which was heavily publicized.

19.  That the entire time during which Plaintiff, Elizabeth Marie Phillips, was employed as a Legal Assistant serving at the pleasure of Defendant Hatfield her job performance has been satisfactory and better within the intents and guidelines as applied to matters arising within the purview of Title VII of the Civil Rights Act of 1964, 43 U.S.C. § 2000e, *et seq*.

20.  That during Elizabeth Marie Phillips' employment with the Raleigh County Prosecuting Attorney's Office, she encountered numerous factors, which taken together resulted in the development of severe anxiety, ulcer and the need for treatment for anxiety and ulcer.

21.  Plaintiff grew more and more concerned about the off the clock text messages from Defendant Hatfield that were not related to work. As Hatfield's personal issues were coming to the forefront and about to hit the press, he gave this Plaintiff what was to her an unprecedented raise of fifty percent. She was surprised by the raise and the amount. Soon after, Defendant Hatfield's behaviors would worsen, his mood and the feel around him darken, and her increasing loyalty in the face of a work place nightmare would be demanded.

22.  Plaintiff learned others were receiving similar message to those she received from Hatfield, but also learned that Hatfield's inappropriate texts universally viewed by

others as too familiar, overtly too friendly, awkward and of a grooming nature, tending to suggest some kind of special relationship with each.

23.    Plaintiff felt compelled to make some kind of response to Defendant Hatfield's messages to stay in Defendant Hatfield's good graces. Defendant Hatfield was the head man on the organization chart at her office and was known to demand attention. As she and others in the office compared the texts they each received, they realized that Defendant Hatfield was utilizing the same basic approach to each and was seemingly grooming some members of the prosecutor's office.

24.    Defendant Hatfield's behavior, described both above but mostly herein below, created an incredibly hostile work environment and it produced extreme anxiety for Plaintiff and others. Plaintiff was emotionally drained, anxiety ridden, hurting from the stress, and she had to see a doctor who, in addition to anxiety diagnosed ulcer.

25.    Plaintiff and her co-workers worked in collective dread and fear of Defendant Hatfield's hostility and tried to actively avoid drawing attention from Defendant Hatfield because of his capacity for angry outbursts, personal affronts, and emotional and even physical abuse. One day, he literally placed several female members of the office into "time-out" by ordering them into a small conference room and requiring that they sit there as long as an entire work day due to his anger.

26.    That during this time, it was widely known that Defendant Hatfield's nickname was Richard "Dick" Petty, which Plaintiff and her co-workers believed and understood to mean that Defendant Hatfield was boasting that he was arrogant, rude, and willing to retaliate for small slights against him. Defendant Hatfield self promoted and perpetuated this nickname. Upon information and belief, the nickname was well

known not only in the office of the prosecuting attorney but also to the Commission Defendants.

27.    Plaintiff had witnessed and experienced outbursts from Defendant Hatfield in the past such that she knew small slights could set him off. On one such occasion. Defendant Hatfield had come downstairs in the Plaintiff's office and asked where everyone was and then called a prosecutor and asked where he was and screamed and yelled at him on the phone in front of staff. Thereafter, Defendant Hatfield angrily told Plaintiff and another female assistant, "You all go the f - - -[1] home too." Plaintiff was stunned and was certainly was not going to leave at that point. That marked the first big explosive behavior moment Plaintiff had seen, but matters spiraled in the summer of 2024 and it began to feel dangerous to attend work.

28.    A coworker's report to Defendant Hatfield that the workplace was toxic had no beneficial effect, and things actually worsened afterwards. Defendant Hatfield's demeanor darkened, and the work environment became even more hostile.

29.    Hatfield's outbursts became more pronounced. Plaintiff saw and heard Defendant Hatfield yelling, throwing items, and being incredibly angry and tense with staff. The entire staff was on edge, anxious and in a fight or flight mode due to Hatfield's behavior.

30.    Females were treated differently and wrongly in the prosecutor's office by Defendant Hatfield. As further detailed herein, the environment was both subjectively and objectively offensive, the harassment suffered by Plaintiff was due to the Plaintiff's

---

[1] As in other pleadings in related matters which quote Defendant Hatfield, these counsel have adopted some censorship of certain explitives used by the former prosecutor.

membership in a protected class (females), the conduct was severe or pervasive, and thereby establishing an objectively reasonable basis for employer liability. These assertions are supported by allegations made throughout this complaint. All those are incorporated into this paragraph.

31. Defendant Hatfield kept a sawed-off shotgun on the mantel on his office. It was evidence from a sexual assault conviction - that fact grew more ironic and the gun's presence more disconcerting over time. Defendant Hatfield took Plaintiff to his office for the express purpose of showing the gun to her.

32. That by April or May of 2024, despite recent revelations about allegations of work place harassment inside another office in the courthouse, the Commission Defendants had not developed any such human resources aids for employees. Employees were left to fend for themselves as would remain the situation until after the Commission Defendants were given preservation of evidence notices on behalf of members of the prosecuting attorney's office . Only then did the Commission Defendants act. Upon information and belief, such actions were not motivated by a desire to prevent work place harassment, hostile workplace environments or the like, but were in fact created almost overnight in an effort to only to mitigate or reduce claim values for damages to victims of workplace harassment, reprisals and hostilities which had been tacitly condoned through the Commission Defendants' deliberate choice to remain indifferent to employee harassment and reprisals.

33. The Raleigh County Commission and the Commission Defendants jointly and individually were aware of a prior lawsuit filed by employees in the Raleigh County Circuit Clerk's Office in May of 2024, alleging the imposition of sexual harassment,

racial discrimination, gender/sexual orientation discrimination, and other assertions of a hostile work environment which included allegation that the Commission and Commission Defendants had failed to take corrective actions and either were or should have been aware of the complaints. The filing of that action generated notoriety and attention to the fact that the Raleigh County Commission and the individual commissioners provided no human resources department or personnel. The individual commissioner defendants, under color of state law, and the commission itself continued in the practice and policy of having no such department available.

34. In early 2024, Defendant Hatfield began going to the basement of the office building often and would remain there for hours. Defendant Hatfield had excluded the placement of the new surveillance system into the basement. As Defendant Hatfield's behaviors became unpredictable and tension-filled, it became more toxic, awkward and hostile in the workplace, and your Plaintiff was increasingly afraid to be in Defendant Hatfield's presence.

35. As spring turned to summer in 2024, the office became a more and more hostile work environment with increasingly frequent outbursts, personal affronts, disparaging statements and physical displays of anger and frustration by Defendant Hatfield toward assistant prosecutors and support staff. That there still existed no Human Resource ("HR") department or HR personnel to whom employees at the Raleigh County Prosecuting Attorney's Office could report any work related issues. No so-called "private" help line existed. The individual Commission defendants and the Commission itself continued it's policy, practice and custom of deliberate

indifference to workplace hostility, toxicity, and to employee rights, health and safety, such that your plaintiff suffered deprivation of secured civil rights, as well as physical and emotional injury which was preventable. There had already been well known and publicized instances of similar allegations in other courthouse offices.

36. That Defendant Hatfield's problematic conduct, behavior, and actions were noticeably exacerbated following allegations made against him in a domestic violence petition which the matter became widely known in public news outlet reports.

37. That in July of 2024, Defendant Hatfield called this Plaintiff into a portion of the office where the this Plaintiff and two other legal assistants were, and he locked the door for two (2) hours or three (3) hours and proceeded to make them listen to the extremely graphic and lurid details of his sexual exploits. Rather than simply denying the allegations which Plaintiff and others knew he was facing through news reports and word of mouth, Defendant Hatfield made lengthy, lurid and excessively descriptive accounts of sexual adventures he claimed were consensual. Your Plaintiff and other female employees were forced by Defendant Hatfield to endure his stories. He even tried to get them to listen to recordings, but this they were able to refuse. Your Plaintiff was shocked that Defendant Hatfield made her listen to stories about his sexual prowess, actual sexual events, and details that were simply, to her, smut which he had no business forcing upon her and others, including a story about oral sex in a local drive thru.

38. Defendant Hatfield threatened to show the women in the office videos and pictures to support his far too graphic verbal recitation of events, which only increased

tensions and stress in the office and caused her to fear that ne would expect her to view and/or watch them.

39.     Plaintiff was aware that the office personnel were threatened that they had better remain loyal to Hatfield when the news about him broke into the press, but no one directed that threat to her, and she did not hear the threat explicitly. She did think it matched Hatfield's behaviors and general attitude. Stunningly the Commission and commissioner defendants wanted each of the women in the office to have a one on one meeting with Hatfield so he could explain and "win them back." The deliberate indifference, recklessness, wanton, and intentional subjection of the females in the office to Hatfield was oppressive and pervasive. It was both subjectively and objectively offensive.

40.     Defendant Hatfield seemed paranoid about disloyalty, and his behavior became more and more driven thereby. Upon information and belief, Defendant Hatfield began spying on Plaintiff and colleagues by use of the office camera system, which was linked to his personal cell phone. In fact, Hatfield sent a copy of the security footage from his phone to this Plaintiff once, and she therefore knew he was watching the cameras. Upon information and belie, the cameras have sound functionality except in the conference room, and upon information and belief, Defendant Hatfield listened to those as well. Hatfield refused to have cameras placed in the basement.

41.     That after placing the Defendant Hatfield, Defendant Raleigh County Commission, and the individual defendants were notice of the sexual and gender based harassment and the hostile work environment in the prosecuting attorney's office, the Defendants did not take appropriate and adequate measures to protect Plaintiff and allowed

Defendant Hatfield to continue to come into the office daily for the purpose of harassing each of the employees that had placed the Defendants on notice of Defendant Hatfield's inappropriate conduct, and doubling down on this tactic, they refused to accept Hatfield's resignation thereby perpetuated the increasingly hostile workplace for another two months while the criminal justice system in Raleigh County ground painfully to a near stop.

42. That on or about the end of August 2024, Defendant Hatfield went on voluntary leave amidst the allegations against him but shortly returned to the Raleigh County Prosecuting Attorney's Office thereafter in which caused the Plaintiff and the other employees to suffer fear and anxiety of his presence in the office. Your Plaintiff and others felt sick and anxious at the sound of his truck pulling into the office. These events lead to her need for treatments and medications to relieve an ulcer and anxiety.

43. That the Commission Defendants continued to allow Defendant Hatfield to come into the office despite having also received a two-page letter from three Circuit Court judges in Raleigh County that were concerned enough about the information that they had heard regarding Defendant Hatfield that they wrote a two-page letter to the Defendant commissioners asking them to request a full investigation into Defendant Hatfield.

44. That the two-page letter from three Circuit Judges indicated that Raleigh County Commission President Greg Duckworth, Commissioner Daniel Hall and Commissioner Linda Epling were "previously made aware of allegations" filed against Hatfield in a Domestic Violence Petition." The letter further stated: "While the allegations in the DVP are serious, it has come to our attention that several other

allegations related to Mr. Hatfield's conduct as prosecuting attorney are circulating through the courthouse and the law enforcement community."

45.    That the letter further noted: "While none of us Judges have any first-hand knowledge of Mr. Hatfield's actions, some of us have been told by individuals that we respect, that there is evidence that Mr. Hatfield has engaged in activities which are inappropriate on a professional basis and are impacting the operations of the Prosecuting Attorney's Office.  Some of the information provided to us relates to **inappropriate communications with female office staff**, use of his position and/or influence to impact the hiring of individuals for positions related to law enforcement outside of his office, and potential abuse of his position and decision making in other aspects of operations within his office." (Emphasis supplied).  Despite this letter penned by three well-respected circuit court jurists, the Commission and commissioner defendants insisted that Ben Hatfield remain as prosecutor, insisted that these harassed females continue to work in the office with Hatfield, and alarmingly referred requests  for relief from these matters to Hatfield himself for decision and resolution.

46.    That even after allegations against Hatfield arose in a very public forum, any and all supposed efforts by the Raleigh County Commission were far too little and far too late to make any difference whatsoever, and came well after Hatfield lost his own court hearings in highly publicized matters that reflected poorly.  In fact, the Raleigh County Commission was, upon information and belief, fully content to allow the workplace issues to continue and give Defendant Hatfield an opportunity to sweep the entire problem under the rug if he could win the other matters in court.  If the

Commission's inactivity was not already enough, the Commission's failure to act once matters were highly publicized pulled the curtain aside revealing the Commission Defendants' deliberate indifference to the Plaintiff and others similarly situated.

47.    That the Commission Defendants' failure to protect employees even after other significant employment issues in another county office had revealed the significant issues posed by lack of human resources services, a help line, or other employee safety and discriminatory issues had come to light. The whole system was decades past neglect and reflected a practice and custom of deliberate indifference to employee well-being, well-being which the Commission Defendants collectively well knew was at risk. The choice whether to provide HR, resources, call lines, handbooks, guidelines or the like was deliberate action.

48.    That the Commission Defendants took no action to alleviate the increasingly hostile conditions. In fact, the Commission conducted no real investigation, but actually piggy-backed on the investigations of others, and the Commission Defendants actually rejected or failed to accept a resignation letter offered by Hatfield, which would have eliminated Hatfield's termination and reprisal threats many weeks before Hatfield was finally allowed to resign. Although the Commission eventually filed a petition to impeach, it did so only after Hatfield seemingly lost his last reasonable appeal in the public domestic case, and the resolution issued by the Commission setting forth grounds was without the depth or clarity which any reasonable investigation into such matters would have provided. The protection of the employees was not approached seriously, rapidly or purposely. In fact, a prosecutor

fired by Hatfield as reprisal for reporting serious concerns to the Circuit Court Judges concerning compromised criminal mattes was not asked back to work even after Hatfield resigned.

49. During this same general period of time, while the Commission and commissioner defendants refused to accept Hatfield's resignation, Hatfield's office was engaged in a very question prosecution of a matter at the bedroom community of Glade Springs which was, upon information and belief, of special concern to Defendant Duckworth. Also during this time, Hatfield without any reasonable explanation was refusing to prosecute a case in which an animal was shot and killed where the defendant was represented by Hatfield's own domestic attorney.

50. That as the Commission Defendants allowed Defendant Hatfield to continue to come into the office after being placed on notice of the domestic violence petition filed against Hatfield, the workplace harassment, and in appropriateness with female office workers and attorneys. Defendant Hatfield went into the office daily and would stare at Plaintiff and other employees for prolonged periods of time making Plaintiff and other employees feel afraid, anxious and worried about their jobs and their safety.

51. That Plaintiff experienced anxiety daily as she and her other colleagues would wonder whether Defendant Hatfield would be coming into the office each day and feared the sound of his truck pulling into the office.

52. That a loyalist would let Defendant Hatfield into the office through the fire escape. On occasion, Defendant Hatfield would enter and exit from the building through the office fire escape stairwell making it difficult for Plaintiff and her colleagues to know if he was in the building or not in which felt it was another way for Defendant

Hatfield to harass and intimidate them. One Hatfield loyalist in the office began spending a great deal of her time in the basement with Hatfield, making the workplace even more toxic and hostile.

53. Once the so-called human resources call line was finally established, Plaintiff filed several Human Resource Complaints but no one came to speak or listen to the Plaintiff or upon information and belief, any of the other employees concerning their concerns. Plaintiff found out through the news that Defendant Commissioners had launched their own investigation into Defendant Hatfield on October 1, 2024. To date, Defendant Commissioners have yet to interview or speak with Plaintiff or any of her colleagues regarding this matter. Whatever "investigation" the Commission and the individual defendants claimed was too little, too late and seemingly conducted absent any actual investigation into the office related matters.

54. The Commission and the commission defendants offered no information to the workers. Even to this date, the staff learns about decisions concerning their well-being by watching the news.

55. That as none of the Defendants listened to her and her other colleagues concerns, Plaintiff felt like she was going to work blind, fearing what Hatfield might do. He was increasingly bizarre at work, and she and others lived in fear that he might fire them all in a fit or worse toward the females.

56. That despite the serious allegations and news reports, the commission defendants failed to take any action to protect your Plaintiff or others in the office from harassment, mistreatment, hostile work environment, cruel and unusual punishment, and infringements on speech and liberty.

57. That the Raleigh County Commission and individual commissioner defendants took no action to alleviate the increasingly hostile conditions.

58. At least one or more of the individual Commission defendants, the Commission itself, and Defendant Hatfield conspired to have the County Commission's own attorney hired as an assistant prosecutor by Defendant Hatfield, and while the attorney was well-liked by most people, the Plaintiff and others came to believe that said attorney did not have their best interests as a goal. Without action by the Commission defendants or Defendant Hatfield, that attorney resigned his position as an assistant prosecutor and, upon information and belief based upon the facts that are known to Plaintiff presently, said individual is not a named defendant herein.

59. However, in his dual role as an assistant prosecutor and counsel for the Commission Defendants, said attorney was well aware of the issues that Plaintiff and her co-workers were experiencing in relation to the behavior and actions of Defendant Hatfield which created a hostile and untenable working environment.

60. That despite the presence of commission defendants' counsel in the office, the letter from the circuit court judges, the media reports of findings against Defendant Hatfield in a court of law as to matters of serious consequence, and direct knowledge of the physical, mental and emotional impact that Defendant Hatfield directly had on female staff, female attorneys, and one male colleague who had bravely reported malfeasance in office, the commission defendants took no steps to remove Defendant Hatfield from the office, did not file the necessary petition, and upon information and belief, did not conduct a meaningful inquiry into the issues she and others faced and endured. During Hatfield's voluntary leave, a Hatfield loyalist in the office assisted

him in surreptitiously gaining entry to the office after preservation of evidence letters had been delivered to Hatfield, the Raleigh County Prosecuting Attorney's Office and the Commission defendants. Upon information and belief documents have been shredded since preservation notices were served, with some shredding at the direction of or while the office remained under the direction of Defendant Hatfield. The commission defendants took no protective actions at all until noticed of pending lawsuits by the service of preservation letters.

61.    That Counsel for the Commission promised Defendant Hatfield would not be back in the office. However, Defendant Hatfield did return to the office, fired Plaintiff's co-worker, and continued to perpetuate hostility, making everyone in the office undeniably uncomfortable. These actions were intentional, oppressive and malicious. During Hatfield's voluntary leave, an employee loyal to Hatfield told another employee that told Plaintiff and others that they had better "get in line" because there would be "hell to pay" when Hatfield returned to office, and upon information and belief, said statements were communicated as a direct message from Defendant Hatfield or from one or more of the individual Commission defendants.

62.    That without warning, Defendant Hatfield returned to the office, fired a colleague, and resumed staring at your Plaintiff and others, and made the workplace nearly unendurable. Not only did the Commission not take action, but the assistant prosecutors and staff were informed that failure to attend work, failure to subject themselves to Hatfield, failure to endure more hostility, more harassment and more malicious and intentional oppression, would result in their termination. The Raleigh County Commission, and Defendant Duckworth, individually and under color of

state law, communicated that particular message with deliberate indifference to the civil rights of Plaintiff and the serious psychological and emotional injuries, risk of injuries, and workplace hostility Plaintiff and her colleagues would be facing. Some colleagues were unable to remain in their positions.

63. Once Defendant Hatfield had fired attorney Chad Lilly, Plaintiff could not help but expect the axe to fall on her or others at any time. All the while, Hatfield's behaviors, which the Commission Defendants insisted the Plaintiff continue to endure, were increasingly worrisome.

64. That Plaintiff and her co-workers were caused to experience chronic worry and fear that they too would be fired from their positions. Indeed, word has been passed to Plaintiff and colleagues that pursuit of their legal claims for these human rights violations, sexual and gender based discrimination, sexual harassment, and constitutional rights violations will be punished by the defendants named herein, their proxy(ies) or appointee(s).

65. That the Commission defendants, despite knowing about the issues with Defendant Hatfield in the Prosecutor's office, never gave any guidance or set forth any expectations as to how the situation was being addressed and failed to take those steps necessary to remove Hatfield from the office. Upon information and belief, the commission defendants intended that Plaintiff's and colleagues' worries and concerns be silenced. Indeed, upon information and belief, Defendant Hatfield had impacted criminal investigations, charges and matters intentionally so as to produce results favorable to certain commission defendants.

66. That the Defendant commissioners waited until October 10, 2024 to start the

impeachment process and by then, the workplace was utterly unbearable, with police agencies even refusing to present cases to the Grand Jury if Defendant Hatfield remained. Instead of addressing employee civil rights, safety, health and welfare, all of the named defendants herein allowed the entire system to come to a halt, requiring the actions of others before accepting that they had to address the circumstances. Still the document which the commission produced was barely passable for its purpose, and on information and belief, was intentionally drafted in that manner after a likewise poor inquiry.

67. That Plaintiff experienced daily stress, worry, fear, and anxiety that Defendant Hatfield would randomly appear at the Prosecuting Attorney's Office in which made it difficult for her to effectively do her job.

68. That Plaintiff experienced daily stress, worry, fear, and anxiety that she would be retaliated against and even now suffers from stress, anxiety, depression and other issues associated with and caused by the stress of these events.

69. That Plaintiff now suffers from stress, anxiety, depression and other issues associated with and caused by the stress of these events.

70. That Plaintiff has developed stomach issues, had an ulcer and additional serious medical conditions due to the stress and anxiety that she suffered as a result of the collective defendants' conduct.


## COUNT I - SEXUAL HARASSMENT IN VIOLATION OF THE HUMAN RIGHTS ACT AND TITLE VII OF THE CIVIL RIGHTS ACT

71. That the Plaintiff re-alleges and incorporates by reference all forgoing paragraphs as

if they were fully set forth specifically herein, below.

72. That Former West Virginia Code § 5-11-2 provided a statement of policy as to the West Virginia Human Rights Act which was in place and effective until the 2023 legislative repeal thereof became effective February 8, 2024, and before it's repeal, West Virginia jurisprudence was well established that"[a] plaintiff may, as an alternative to filing a complaint with the Human Rights Commission, initiate an action in circuit court to enforce rights granted by the West Virginia Human Rights Act." *Syllabus point 1, Price v. Boone County Ambulance Authority, 175 W.Va. 676, 337 S.E.2d 913 (1985). Weimer v. Sanders, 752 S.E.2d 398 , 232 W.Va. 367 (2013).* The Human Rights Act was re-enacted and codified at West Virginia Code 16B-17-1, et seq.,, and employs the same operational language as to discriminatory practices and exclusivity, which depends as cited herein above, on the election of a permissive filing. *See, Price (1985), Weimer (2013).*

73. Accordingly, Plaintiff's election to proceed to civil action in circuit court is permitted.

74. That Defendant Hatfield's actions, as set forth herein, were unwelcome. Plaintiff did not want Defendant Hatfield to text her uncomfortably, groom her, stand and stare into her office, make her listen to his graphic and detailed stories of his version of his own extra-marital sexual exploits, threaten her and others in the office, require female staffers to hold his hand while he talked to them, or take the other myriad actions which made her uncomfortable, anxious, physically ill and has resulted in her own counseling to deal with anxieties and repercussions of his actions.

75. That Defendant Hatfield's comments and actions, as set forth herein, were targeted

to Plaintiff on the basis of her sex and gender, protected characteristics. Defendant Hatfield texted many females in the office inappropriately, commented on female employee's (lawyers and staffers) bodies, often made the females hold his hand as he spoke to them, and the room of employees to whom he related lurid details of his version o his extra-marital sexual exploits.

76.    That the conduct was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and create a harassing and offensive work environment. Your Plaintiff experienced severe anxiety due to Defendant Hatfield's texting, about the hand holding in the office, about his comments about female employee's bodies, and about the sexual exploit stories to which he made her and other female employees listen. The severe anxiety took on physical manifestation hurting her stomach and making her feel significantly drained and in a fight or flight state when she had to go to the office (for a job that she would otherwise have loved). She was immediately anxious and physically ill when she heard his truck pulling into the office and knew he was coming into the office. The fits, the yelling, the threats, and the overall bizarre behaviors only heightened the impact of the sexual harassment.

77.    That the Commission defendants ratified and condoned the sexually harassing work environment created by Defendant Hatfield. The Commission is liable per the State Code of Rules as noted in Section VII below, but in addition to this, upon information and belief, the treatment of female staffers as described herein as known to one or more of the individual commissioner defendants and thereby imputed to the Commission itself.

78.    That the Commission defendants knew or should have known about Defendant

Hatfield's sexually and gender-based, and/or sexual harassment, but failed to take remedial or ameliorative actions. Title VII claims and State Law Standards for non-Constitutional claims do not require proof of discriminatory intent for employer liability (Strickland v. United States, 21-1346 (4th Cir. Apr 26, 2022)).

79.     Nonetheless, the Commission defendants ratified and condoned the sexually harassing work environment created by Defendant Hatfield, rejected Hatfield's first attempt to resign, and in fact insisted that Plaintiff and other females continue to be exposed to more of the same while permitting threats, ignoring the so-called HR line reports, and even threatened her with her own termination should she choose to miss work to avoid continued exposure to these circumstances.

80.     At all times described herein, Defendant Hatfield acted under color of state law with the subjective and deliberate intent to violate Plaintiff's secured constitutional protection against sexual harassment.

81.     That Defendant Hatfield's sexually harassing conduct was done under color of law in a wanton or reckless manner, with deliberate indifference to its impact on Plaintiff, and was oppressive.

82.     That as a direct and proximate result of Defendant Hatfield's sexually harassing conduct, Plaintiff suffered pain, embarrassment, humiliation, mental anguish, and loss of dignity.

83.     That as a direct and proximate cause of Defendant Hatfield's harassment and the Commission's failure to address the issue, the terms, conditions, and environment of Plaintiff's employment were negatively impacted.

## COUNT II - GENDER DISCRIMINATION IN VIOLATION
## OF THE HUMAN RIGHTS ACT

84. That the Plaintiff re-alleges and incorporates by reference all forgoing paragraphs as if they were fully set forth specifically herein, below.

85. That the Plaintiff is a member of a protected class because of her gender.

86. That Defendant Hatfield's comments and actions, as set forth herein, were unwelcome and related to her gender.

87. That the conduct was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and create an abusive, hostile, and offensive work environment.

88. That the Commission defendants knew or should have known about Defendant Hatfield's gender based discriminatory acts, but failed to take remedial or ameliorative action.

89. That the Commission defendants ratified and condoned the gender based discriminatory work environment created by Defendant Hatfield.

90. That Defendant Hatfield's gender based discriminatory conduct was imposed under color of law upon Plaintiff with malice and in bad faith.

91. That Defendant Hatfield's gender based discriminatory conduct was done under color of law in a wanton or reckless manner.

92. That as a direct and proximate result of Defendant Hatfield's gender based discriminatory conduct, the Plaintiff suffered pain, embarrassment, humiliation, mental anguish, and loss of dignity.

93. That as a direct and proximate cause of Defendant Hatfield's harassment and the Commission's failure to address the issue, the terms, conditions, and environment of

Plaintiff's employment were negatively impacted.

## COUNT III - HOSTILE WORK ENVIRONMENT

94.   That the Plaintiff re-alleges and incorporates by reference all forgoing paragraphs as if they were fully set forth specifically herein, below.

95.   The phrase "Commission defendants" or similar used herein and any other place in this Complaint is intended to include the Raleigh County Commission, its employees and agents, and each of the Commissioners who are sued individually herein.

96.   That Defendant Hatfield's actions complained of herein were: unwelcome, based on the plaintiff's protected characteristic as a female, sufficiently severe or pervasive to alter the conditions of employment and create an abusive or hostile work environment, and imputable to the employer on some factual basis as set forth herein below and above.

97.   That Defendant Hatfield's actions, as set forth herein, were targeted at Plaintiff on the basis of her sex/gender, a protected characteristic.

98.   That the conduct was sufficiently severe or pervasive to alter the Plaintiff's conditions of employment and create an abusive, hostile, and offensive work environment.

99.   That Plaintiff subjectively perceived her working conditions as hostile and abusive.

100.  That Defendant Hatfield's offensive conduct created an objectively hostile and abusive work environment as set forth herein above.

101.  That Defendant Hatfield's offensive conduct was pervasive and repetitive, as alleged herein above.

102. That other female employees were the targets of Defendant Hatfield's offensive conduct, to which Plaintiff was witness as set forth herein above.

103. That the Commission defendants knew or should have known about Defendant Hatfield creating a hostile work environment, but failed to take remedial or ameliorative action as set forth herein above.

104. That the Commission defendants ratified and condoned the hostile, abusive, and offensive work environment created by Defendant Hatfield, forced Plaintiff to endure it longer, rejected Hatfield's first resignation, ratified termination of a coworker, permitted threats of reprisals, and failed to act to ensure preservation of evidence.

105. That Defendant Hatfield's harassing and threatening behavior were imposed upon Plaintiff with malice, with intent to oppress, and intent by both Hatfield and Commission Defendants.

106. That Defendant Hatfield's harassing and threatening behavior was done under color of law in a wanton or reckless manner.

107. That as a direct and proximate result of Defendant Hatfield's harassment and threats, the Plaintiff, suffered pain, embarrassment, humiliation, mental anguish, fear of losing her job and loss of dignity.

108. That as a direct and proximate cause of Defendant Hatfield's harassment and the Commission's failure to address the issue, the terms, conditions, and environment of Plaintiff's employment were negatively impacted.

109. The office grew only more hostile and toxic as more revelations surfaced concerning Defendant Hatfield, as the Commission and Commission Defendants placed parties in the office as their eyes and ears, and as the Commission and individual

commissioner defendants acted to subject Plaintiff and others to ongoing hostilities at work, arising from the harassment already endured, whereby Hatfield remained in place, continued to run the office, stood and stared a workers, threatened reprisals, and as other commission employees also conveyed threats of reprisal, such that the situation became worse instead of better. At the worst moment, when defendant Hatfield announced intent to return to the office after a voluntary absence, during which the Commission and individual commission defendants rejected his offer of resignation which would have protected all their employees, the Commission and Defendant Greg Duckworth, individually, addressed Plaintiff and the remainder of the county employees in the prosecuting attorney office informing that they had to attend work under those untenable conditions, implying that they would be terminated from their jobs otherwise., guaranteeing their continued subjection to hostile work environment as a condition of their continued employment and perpetuated and exacerbating their anxieties, mental and emotional injuries, constitutional injuries, and physical manifestations of stress bought on the by the hostile work environment.

## COUNT IV - CIVIL RIGHTS VIOLATIONS
### 42 U.S.C 1983, 1988

110. That the Plaintiff re-alleges and incorporates by reference all forgoing paragraphs as

if they were fully set forth specifically herein, below.

111.    The phrase "Commission defendants" or similar used herein and any other place in this Complaint is intended to include the Raleigh County Commission, its employees and agents, and each of the Commissioners who are sued individually herein.

112.    Defendant Hatfield and the Commission Defendants are all hereby alleged to have violated Plaintiff's Fourteenth Amendment rights.  The Fourteenth Amendment's Equal Protection Clause, as enforced through 42 U.S.C. § 1983, prohibits intentional sex discrimination by state actors, including sexual harassment by government or county employees (Wilcox v. Lyons, 970 F.3d 452 (4th Cir. 2020); Beardsley v. Webb, 30 F.3d 524 (4th Cir. 1994)). Defendant Hatfield treated Plaintiff differently from male individuals in the office, and his disparate treatment was the result of intentional or purposeful discrimination based on her gender and his treatment of female employees. (Cornell v. W.Va. Div. of Corr. & Rehab., Civil Action 2:24-cv-00120 (S.D. W.Va. Oct 01, 2024)).

113.    Defendant Hatfield is the former Prosecuting Attorney of Raleigh County, West Virginia, and both he and the Commission Defendants, in their individual capacities acting under color of state law, and the Commission itself, acted in all respects and regards toward the Plaintiff as an employee under color of law as the hiring and appointment of assistant prosecutors and the hiring, management, payment and retention of legal assistant are endeavors shared between these defendants pursuant to West Virginia Code §7-7-7 and the policies, practices and customs in historical use in Raleigh County by the Raleigh County Commission.

114.    The Commission and all of the individual commissioner defendants violated

Plaintiff's Fourteenth Amendment right to equal protection. Plaintiff was subjected to sexual harassment as described herein throughout. Plaintiff reported both when finally able to do so with the too late establishment of an HR-line for the harassment. The Commission and individual commissioner defendants response reflects their deliberate indifference to Plaintiff's harassment. Said deliberate indifference was motivated by a discriminatory intent.

115. Upon information and belief, Commission and individual commissioner defendants possessed either actual or constructive knowledge of the harassment perpetrated by Defendant Hatfield and responded with conscious of reckless disregard of Plaintiff's right to be free of said harassment in the work place.

116. Plaintiff was subjected, under color of law, at employment to conditions which constituted punishment and which created an ongoing risk of serious harm. Indeed, even now, your Plaintiff suffers the physical impacts of events which lead her suffering from stomach issues, fear, anxiety, and other medical problems.

117. Both Defendant Hatfield and Commission defendants were deliberately indifferent to securing and preserving Plaintiff's freedom of expression. The defendants both knew that the Plaintiff and other employees were warned to "get in line" or there would be "hell to pay" when Ben Hatfield returned to work. Defendant Hatfield demonstrated the intent behind these threats when he fired the whistle blower, a move which chilled your Plaintiff and others from speaking out as to the deplorable, harmful and desperate conditions of employment. The commission defendants had an agent present during loyalty warnings.

118. Plaintiff's Fourteenth Amendment right to seek and maintain employment, free from

discrimination. was subjected to serious risk of permanent and substantial harm through the deliberate indifference of Defendant Hatfield, and/or the Commission Defendants, to said right. In particular, Plaintiff and the rest of the employees in the Raleigh County Prosecuting Attorney's Office were employed and directed by Defendant Hatfield who directed certain actions in certain cases, some of which, upon information and belief, were subject to improper considerations based on Defendant Hatfield's own sexual or otherwise deviant behaviors, thereby implicating the office and the assistant attorneys and employees therein in potentially unethical acts, omissions and decisions which could negatively impact licensing and/or professional reputation. Further, Plaintiff and colleagues were subjected to direct threats to their continued employment, which likewise posed serious risk of harm thereto.

119. Should Plaintiff substantially prevail on her Fourteenth Amendment claims, then she invokes and is entitled to provisions of 42 U.S.A. 1988 which enables the Court to award attorney fees and costs to a Plaintiff substantially prevailing in civil rights litigation.

## COUNT V - NEGLIGENCE

120. That the Plaintiff re-alleges and incorporates by reference all forgoing paragraphs as if they were fully set forth specifically herein, below.

121. That Defendant Hatfield, the Commission Defendants, their agents, and John/Jane Doe committed all the acts and omissions alleged throughout this Complaint in the course of their employment and duties for the Raleigh County Commission.

122. The Commission Defendants were negligent with regard to hiring, training, supervising, retention and protecting employees, which negligence proximately caused and/or contributed the harms to Plaintiff herein. Said negligence was conducted intentionally and was committed either maliciously or was oppressive to your Plaintiff and others.

123. The Commission Defendants were negligent, which neglect was malicious, oppressive or intentional, in their failure to provide your Plaintiff a human resources department or to train supervisors and staff in the recognition and prevention of sexual harassment and hostile work environments.

124. Defendant Hatfield's actions alleged herein constitute negligence *per se* and proximately caused and/or contributed to your Plaintiff's damages as described herein. Hatfield's negligence was intentional, malicious, and oppressive.

## COUNT VI - CONSPIRACY

125. That the Plaintiff re-alleges and incorporates by reference all forgoing paragraphs as if they were fully set forth specifically herein, below.

126. The phrase "Commission defendants" or similar used herein and any other place in this Complaint is intended to include the Raleigh County Commission, its employees and agents, and each of the Commissioners who are sued individually herein.

127. That Defendant Hatfield conspired together with certain or all of the commission defendants to commit each and every violation set forth herein above in counts I through IV, and that said conspiracy was, at the least, occasioned where the

Commission Defendants knew and allowed the perpetuation sexual harassment, hostile work environment, and constitutional violations and deprivations.

128. That the commission defendants employed person making and/or communicating threats of reprisal to those amongst the office who would speak out or take a stand against Defendant Hatfield.

129. That the Commission Defendants actually failed to accept an initial resignation letter, unreasonably delaying filing an impeachment petition, failed to conduct their own meaningful investigation, and insisted that Plaintiff and others subject themselves to Hatfield when he returned to the office on threat of termination. Said actions were intentional and indifferent to your Plaintiff's resulting harm. Such actions were done with intent or malice and were oppressive.

130. Upon information and belief, both Defendant Hatfield and the Commission Defendants, in concert, failed to preserve evidence following the presentation to each of preservation letters placing them on alert that certain matters should be preserved in anticipation of discovery and litigation. Upon information and belief, Hatfield took steps to delete electronically stored photographs and information after service of preservation letters. Likewise, on information and belief, the Commission Defendants failed to enact procedures for preservation, including the preservation of video and other electronic media, and failed to enact procedure to preserve evidence in Hatfield's office control.

**COUNT VII - EMPLOYER LIABILITY FOR SEXUAL HARASSMENT**
**TITLE VII AND STATE LAW**
**WEST VIRGINIA CODE OF RULES**

131. At all times herein your Plaintiff was an employee of the Raleigh County Commission, subject to the control and will of the Prosecuting Attorney, Benjamin Hatfield.

132. The phrase "Commission defendants" or similar used herein and any other place in this Complaint is intended to include the Raleigh County Commission, its employees and agents, and each of the Commissioners who are sued individually herein.

133. West Virginia Code of State Rules 77-4-3.1 - "An employer, employment agency, joint apprenticeship committee or labor organization (hereinafter collectively referred to as "employer") is responsible for its acts and those of its officers, agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or reasonably should have known of their occurrence . . . "

134. West Virginia Code of State Rules 77-4-3.3 - "An employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knew or should have reasonably known of the conduct and failed to take timely and appropriate corrective action. In reviewing these cases the Commission will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees."

135. The Raleigh County Commission and/or the Commissioner in their individual

capacity under color of state law knew or should have known about sexual harassment in the prosecuting attorney's office. The facts supporting this allegations are plead as follow, and in the alternative as permitted by Rule 8, West Virginia Rules of Civil Procedure.

136.   Upon information and belief, the Raleigh County Commission and/or some or all of the individual Commissioners had actual knowledge of sexual harassment by Defendant Hatfield because one or more commissioners had been told about the sexual harassment by employees or others in that office. Knowledge of a commissioner is fairly imputed to the other commissioners and to the commission at large. Alternatively, a commissioner with said knowledge has a duty to report that to the Commission at large, and therefore the Commission should have known of the harassment.

137.   Upon information and belief the Raleigh County Commission should have known about the sexual harassment by Defendant Hatfield because the Commission should have already had a human resources anonymous complaint call line in place and did not. Therefore the Commission should have known about the sexual harassment by Defendant Hatfield.

138.   The Commission and each of the individual Commissioners exposed your Plaintiff to sexual harassment by a person in a supervisory capacity in their workplace, which sexual harassment the Commission and the individual Commissioners knew or should have known about.

139.   The Commission and each of the individual Commissioners failed to meet their obligations pursuant to West Virginia Code of State Rules 77-4-3.5, which

requires that "Employers are encouraged to take all steps necessary to prevent sexual harassment from occurring. Appropriate preventative steps include, but are not limited to, affirmatively expressing strong disapproval of sexual harassment, developing and implementing appropriate sanctions, informing employees of their right to be free from harassment and the appropriate steps to take if harassment occurs, and developing methods to sensitize all employees regarding appropriate behavior in the workplace." As a consequence, your Plaintiff suffered the sexual harassment described and complained of herein.

140.    Just as with West Virginia Code of State Rules 77-4-3.3, Title VII claims, which do not require proof of intent for employer liability (Strickland v. United States, 21-1346 (4th Cir. Apr 26, 2022)).


## COUNT IX - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

141.    Defendant Hatfield's actions as alleged herein throughout were taken intentionally or recklessly, constituted extreme and outrageous conduct, and inflicted severe emotional distress on Plaintiff.

142.    Defendant intended his actions and treatment of Plaintiff to have psychological and emotional effect.

143.    Defendant's actions as described herein throughout toward Plaintiff were outrageous and would shock the conscious of an ordinarily reasonable person judging or observing the conduct.

144.    The conduct caused the injuries complained of herein, including anxiety, fear of

employment loss, personal safety fears, feelings of being sexually harassed, physical manifestations of stress, dread, pervasive thoughts and feelings of dread, and caused your mental and emotional distress.

## GENERAL PROVISIONS APPLICABLE TO THIS COMPLAINT

145. John and Jane doe defendants are hereby incorporated into each count alleged herein above and are alleged to be individuals who acted with intent to aid the commission of the acts complained of herein by some or all of the Defendants. These are individuals who are not presently known with sufficient specificity to name but who Plaintiff reasonably expects will be revealed through discovery.

146. The injuries, damages, distress and effects of the conduct alleged in any of the counts herein above are hereby incorporated into every county, and Plaintiff specifically hereby alleges these were proximately caused by the conduct alleged in each count.

147. That Plaintiff incurred necessary medical and treatment costs and expenses which were proximately caused by the conduct alleged in each count above and which allegation is incorporated hereby into each count herein above.

148. Plaintiff hereby incorporates every paragraph of this complaint into every section of this complaint and into each numbered count contained herein.

149. Plaintiff intends that this complaint be read and interpreted in its entirety and not piecemeal.

## PLEADING AS TO LIMITATION ON DAMAGES

150. Except where excess is permitted by law, each and every claim made herein is made

for damages up to but not exceeding applicable insurance coverage.

## REQUEST FOR DAMAGES

WHEREFORE, Plaintiff prays for judgement against Benjamin Hatfield, individually and as former prosecuting attorney of Raleigh County; the Raleigh County Commission; Daniel J. Hall, Linda Epling, and Gregory Duckworth in their individual capacities as individuals acting under color of law, and against John/Jane Doe defendants, and further prays that this Court grant Plaintiff's special damages; compensatory damages; nominal damages; statutory penalties; punitive damages; attorney fees and costs; and such other relief as this Court deems proper and necessary together with prejudgment and post-judgement interest if the same be allowable pursuant to applicable law and not if the same be disallowed, together with such costs and fees to which she is entitled as prevailing party pursuant to 42 U.S.C. §1988.

**PLAINTIFF DEMANDS A TRIAL BY JURY**.

<u>Elizabeth Marie Phillips</u>    By Counsel

<u>/s/ Brandon L. Gray</u>
**Brandon L. Gray (WV No. 13071)**
**BRADFORD & GRAY, PLLC**
**220 N. Fayette Street**
**Beckley, WV 25801**
<u>office@bradfordandgray.com</u>

<u>/s/ Matthew A. Bradford</u>
**Matthew A. Bradford (WV No. 11323)**
**BRADFORD & GRAY, PLLC**
**220 N. Fayette Street**
**Beckley, WV 25801**
<u>office@bradfordandgray.com</u>

<u>/s/ Timothy P. Lupardus</u>
**Timothy P. Lupardus (WV No. 6252)**
**Lupardus Law Office, LC**
**PO Box 1680**
**Pineville, WV 24874**
<u>office@luparduslaw.com</u>

<u>/s/ Zachary Whitten</u>
**Zachary Whitten (WV No. 13709)**
**The Whitten Law Office**
**PO Box 753**
**Pineville, WV 24874**
<u>zwhittenlaw@gmail.com</u>